[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, who resides in Hartford, commenced this action for a dissolution of marriage with a complaint filed on November 20, 2000. The return date in this matter was December 12, 2000.
Appropriate service was made upon the defendant, who is also a Hartford resident, on November 16, 2000. The defendant filed a pro se appearance on November 30, 2000. The court finds that the defendant had notice and that the court has jurisdiction in this matter.
The trial commenced on September 27, 2001 before the undersigned.
The plaintiff was represented by counsel and the defendant represented himself. On September 27, 2001, the court was informed that the State of Connecticut had an interest in this matter because the plaintiff has been receiving state assistance for her children. The court heard testimony relating only to custody and visitation on September 27, 2001 and continued the trial in order that plaintiff's counsel could serve the Attorney General in accordance with the provisions of Connecticut Practice Book Section 25-2.
The trial was continued to October 25, 2001 at which time all of the parties, and the Assistant Attorney General, appeared to resume the trial. The matter was tried to completion on that date.
The court has carefully considered all of the evidence presented at trial, the parties' financial affidavits, and child support guideline worksheets which were prepared by the Assistant Attorney General. The court has also considered the pertinent provisions of all relevant Connecticut General Statutes and has applied them to the facts of this case.
 FACTUAL FINDINGS
CT Page 14978
The court finds that the following facts were proven by a preponderance of the evidence at trial:
The plaintiff, whose maiden name was Dorette K. Barnett, married the defendant on October 4, 1996 in Hartford, Connecticut. At least one party has resided continuously in the state of Connecticut for twelve months prior to the date of judgment.
The parties have lived separately for approximately one year prior to the date of the hearing. Credible evidence at trial established that the defendant physically abused the plaintiff during the course of the marriage, and was twice arrested for acts of domestic violence against the plaintiff. The court finds that the parties' marriage has broken down irretrievably, and that the defendant's abuse of the plaintiff contributed to the cause of the breakdown.
There were two minor children born to the parties: Michael S. Nails, Jr., whose date of birth is November 23, 1992, and Shaqiea A. Nails, whose date of birth is October 12, 1995. No other minor children have been born to the plaintiff wife since the date of the marriage. As noted above, the plaintiff is receiving state assistance for the two minor children.
The oldest child, Michael Jr., has severe educational and behavioral deficits. He suffers from Attention Deficit Hyperactivity Disorder and frequently engages in angry and disruptive behavior. Michael Jr. is in an extended day special education class and receives therapy from Stewart Battles at the Village for Children and Families. Shaqiea suffers from severe asthma which requires medication and other types of therapy.
The evidence at hearing proved that the mother has been the children's primary caretaker. Both children have resided primarily with the mother since the parties separated approximately one year ago.
In April 2001, the parties entered into a temporary visitation agreement in this matter. The temporary agreement provided for unsupervised visits by the father with both children (see plaintiff's Exhibit 2). At trial, there was credible testimony from the plaintiff that the defendant had engaged in conduct during the visits which was insensitive to the needs of both children. The court finds that the defendant left both children unattended for brief periods of time on two occasions, smoked in the presence of Shaqiea, who is asthmatic, during visits, and failed to respond appropriately during one visit when Shaqiea was having symptoms of separation anxiety and expressed the wish to be with her mother. CT Page 14979
Family Relations Officer Margaret Romanik testified at trial. Ms. Romanik opined that the children loved both parents. However, Ms. Romanik also indicated that the children had witnessed the father physically abuse the mother and that this has affected Michael, Jr. and Shaqiea. Ms. Romanik believes that the domestic violence in the home created an atmosphere of instability and turmoil which adversely impacted both children. Additionally, Ms. Romanik also believes that Michael has incorporated some of the negative behavior which he observed. It was the family relations counselor's opinion that the defendant needs to address issues relating to his anger and acts of domestic violence, and that the children need to feel that they are safe when they are with their father.
The court found Ms. Romanik's testimony and opinions to be highly credible, and accepts them as fact.
Due to allegations of substance abuse by the father, Ms. Romanik suggested to the defendant that he undergo random drug screenings prior to trial. The defendant did not cooperate with this suggestion, and has not been evaluated for substance abuse.
Ms. Romanik prepared written custody and access recommendations which were introduced into evidence at trial (See plaintiff's Exhibit 1). Ms. Romanik recommended that the plaintiff be awarded sole custody of the two minor children. She also recommended that the defendant undergo a substance abuse evaluation as well as any therapy recommended by that evaluation, and that he participate in domestic violence and anger management therapy.
Ms. Romanik also recommended that at the present time the father should have therapeutic contact with the children as arranged by Stewart Battles at the Village for Children and Families. Per Ms. Romanik, Mr. Battles is willing to work with both parents and the two minor children in facilitating therapeutic contact by the father with his children.
The court found Ms. Romanik's recommendations to be highly thoughtful and competent, and accords them great weight.
The plaintiff, who immigrated to this country from Great Britain, has a twelfth grade education. She has been employed at fast food restaurants, as a cashier at J.C. Penney, and at a home for the elderly. The plaintiff has some limited training in data entry, as a health care aid, and as a reading tutor. She last worked during 1997 when she worked as an aid at a home for the elderly, earning $8.50 per hour.
The plaintiff has been receiving state assistance for her two children CT Page 14980 since August 1, 1998. She is not presently working, but spends a good portion of each day volunteering at her son's school. She claims that she does this in order to be nearby her son who, as noted above, experiences severe learning and behavioral problems. The plaintiff receives $494.00 per month as supplemental social security income for Michael Jr., and she also receives $500.00 per month in state assistance benefit payments for the two minor children.
The defendant is a high school graduate and is in good health. For the past eighteen years he has worked primarily in the restaurant industry. The defendant is an industrious worker and has frequently held two jobs during the marriage. He currently works days at a pizza restaurant as a cook and server, and nights at a local restaurant and grill as a cook.
Based on the evidence presented at trial, the court finds the defendant earns total gross weekly income from both jobs of approximately $400.00, and total net weekly wages of approximately $320.00. The defendant is currently paying child support in the amount of $56.00 per week for current support and $11.00 per week for child support arrearages, pursuant to an order of the Family Magistrate's court (See case no. FA 93 . . . 0613227). The $67.00 weekly payment is made by wage garnishment.
As noted above, the plaintiff receives total monthly income of $994.00 from state assistance and supplemental social security income payments.[1] Based on the plaintiff's good health and prior employment history, the court finds that she has the present capacity to earn gross wages of $340.00 per week ($8.50 per hour x 40 hours per week). The court has used that imputed gross income figure in determining child support payments in accordance with the state guidelines.
The defendant father does not receive medical insurance benefits from either of his employers. The mother and the two minor children have medical insurance coverage under the state sponsored Husky Plan.
 ORDERS
The court has carefully considered all of the evidence introduced at the trial, the parties' financial affidavits dated September 27, 2001, the Child Support Guideline sheets prepared by the Assistant Attorney General, and the pertinent provisions of Connecticut General Statutes § 46b-56, 46b-56a, 46b-82, and 46b-84, in making the findings and orders set forth below.
DISSOLUTION
CT Page 14981
The court finds that the marriage of the parties has broken down irretrievably. A judgment dissolving the marriage may enter.
CUSTODY
Sole custody of the two minor children is awarded to the plaintiff, subject to the defendant's rights of visitation as set forth herein. The court has given careful consideration to the defendant's request that he be awarded joint custody and unsupervised visitation with the minor children. However, based upon the evidence adduced at trial, and the best interests of both children, the court finds that the mother should have sole custody at this time and that the father should have supervised therapeutic contacts with the minor children. The court orders that the defendant submit to random drug tests as requested by the Family Relations Office, and a substance abuse evaluation as directed by Family Relations. The defendant shall sign an authorization permitting the Family Relations Office, and this court, to receive the results of the drug tests and substance abuse evaluations. The defendant is also ordered to contact the Family Relations Office within ten days of the date of this judgment to make arrangements for such screening and evaluation and to cooperate with any follow-up treatment recommended by the substance abuse evaluator.
As an interim order, the court directs that the father have periodic supervised therapeutic visitations with the two minor children. Said supervised therapeutic visits are to be conducted under the supervision of Stewart Battles at the Village for Children and Families, according to a schedule established by him. Both parties are ordered to meet with Mr. Battles within fifteen days of the date of this judgment to establish a protocol for said visitation. The parties are ordered to sign an authorization authorizing Mr. Battles to communicate with Family Relations, and this court, concerning the progress of said therapeutic visitation by the father. The court intends that the foregoing orders be interim orders, pending the defendant's completion of drug screening and substance abuse evaluation, and the therapeutic visits with the children referenced above.
It is the court's intention that the defendant father progress to a more normalized regimen of visitation with both children, as soon as it is therapeutically appropriate for him to do so. The court orders additional assessment by the Family Relations Office and continued involvement by a Family Relations Counselor in this case. The court directs that the Family Relations Office refer this matter for further review by this court, once it has had the opportunity to assess the defendant father's compliance with these orders and the progress of his therapeutic visitation with the children. CT Page 14982
CHILD SUPPORT
The court orders that the defendant pay to the State of Connecticut for the benefit of the minor children the sum of $110.00 per week as child support, plus $5.00 per week on an arrearage of $3,002.69 as of October 15, 2001. The total payment of $115.00 per week shall be made by wage execution. The court finds that the order is in accordance with child support guidelines. Due to the substantial increase in the amount of weekly child support which the defendant will pay as a result of this order, the court will authorize a deviation from guidelines regarding arrearage payments. The court directs the Attorney General to notify the magistrate's court of this order and to implement the necessary steps to effectuate the wage execution.
MEDICAL INSURANCE
Should either party obtain employment that provides medical insurance at a reasonable cost, the party shall enroll the two minor children under said coverage. The obligation of each party to do so shall continue until each child attains the age of majority, or graduates from high school, whichever even occurs last. In no event shall the obligation to provide this insurance coverage extend beyond the youngest child's nineteenth birthday. The court further orders with respect to medical insurance that all the provisions of Connecticut General Statutes § 46b-84 (e) shall apply.
UNREIMBURSED MEDICAL EXPENSES
In accordance with state guidelines, the plaintiff shall pay 43% of all medical, dental, orthodontic, prescriptive, psychiatric, psychological or other related expenses of the minor children which are not reimbursed by insurance. The defendant shall pay the remaining 57% of all such expenses.
PERIODIC ALIMONY
Since the State of Connecticut is providing medical insurance to the plaintiff mother at this time, the court orders that defendant shall pay as periodic alimony the sum of $1.00 per year. Said periodic alimony shall be modifiable only by the State of Connecticut. Said periodic alimony shall terminate completely upon the death of either party, the plaintiff's remarriage, the plaintiff's co-habitation with a male, the plaintiff's removal from State medical insurance coverage, or five years from the date of this judgment, whichever event first occurs. CT Page 14983
PERSONAL PROPERTY
The plaintiff shall retain the sum of $200.00 in her First Union checking account.
DEBTS
Neither party listed debts on his or her financial affidavit. Accordingly, the court makes no findings or orders with respect to the marital debt, if any.
MAIDEN NAME
The plaintiff is hereby restored to her maiden name, to wit Dorette K. Barnett.
SO ORDERED:
Dyer, J.